# Williamson v. Tyson.

*Action on a Promissory Note.*

1. *Agency; when principal bound by fraudulent representation of agent.*—One who deals with an agent is bound to know the extent of his authority; but where the principal seeks to avail himself of the benefits of a contract made for him by another, whether the latter was appointed as agent of the principal or acted as a self-constituted agent, the principal is bound by the representations made and methods employed by such agent to effect the contract.

2. *Same; representation as to solvency.*—In a sale of land the representation of a real estate agent as to another's solvency, from whom the purchaser expected to receive money to pay for land to be purchased from the agent, made to induce said purchase, is a representation of a fact, and is not the expression of an opinion; and if the representations are made by the real estate agent as the vendor's agent

[Williamson v. Tyson.]

in the transaction, and at the time of making them they were known by the agent to be false, such fraudulent representations will vitiate the sale.

3. *Same; declarations of agent admissible as res gestae.*—Where the vendor of land sues upon a contract of sale of land, which was purchased from one acting as an agent of the plaintiff, who, in order to induce said purchase, made certain declarations and fraudulent representations, the vendor thereby ratifies the methods used and inducements held out by such person to effect the contract, and the declarations made by the party assuming to act as agent for the vendor, are admissible in evidence as part of the *res gestae*, tending to establish the agency.

4. *Same; charge to jury.*—Where in an action upon a promissory note which was given for the deferred payment of the purchase money of lands, the issue is whether the land was purchased by the defendant through another as agent for the plaintiff, an instruction to the jury, that if such person was not the agent of plaintiff in the sale of the lot, the jury must find for the plaintiff is properly refused, since whether such person had authority from the plaintiff to sell the lot or not, if a sale was effected by him as such agent, the suit upon the contract was an adoption of his agency.

5. *Same; same.*—Where, in such suit, there was evidence that the person from whom the defendant purchased the land acted as the agent of the plaintiff in the transaction, a charge to the jury is properly refused which instructs them that, if such person was the agent of the defendant in other real estate transactions on the day of the sale of the plaintiff's land to the defendant, the jury may imply that he was the agent of the defendant in the negotiations for the purchase of the land from the plaintiff.

6. *Same; same.*—In an action on a promissory note, given for the deferred payment of the purchase money of land, in which the defendant seeks to avoid the transaction, on the ground that the purchase was made through the agent of the vendor, who, to induce said purchase, made fraudulent representations as to the solvency of another person, from whom the defendant expected to receive the money, in payment of certain notes given him for the deferred payment of certain lots previously sold by the defendant, with which to pay for the land purchased from the plaintiff, a charge which instructs the jury, that if the defendant, in a settlement made with the alleged agent of the plaintiff previous to the sale of the lot in question, accepted his vendee's notes which were not paid, the damage resulting to defendant was not from the representations of the agent of the plaintiff at the time of the purchase of plaintiff's lands, but was occasioned by his acceptance of the notes from the person who previously purchased the lots from the defendant, is properly refused, because it invades the province of the jury, and assumes the determination of the question at issue.

7. *Same; same.*—In such a case, where there is a question as to

whether the person from whom the defendant purchased the lands acted as agent of the plaintiff or of the defendant, a charge which instructs the jury that in this connection they should consider from whom such agent received his compensation, and whom he asked to pay him, and the evidence that he had authority to sell the land in question, is erroneous, as giving undue prominence to the fact as to who paid such agent for his services, and as allowing the jury to infer previous authority to sell from the fact of payment for services in selling

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. J. M. WHITE, Special Judge.

G. M. Williamson, the appellant, brought an action against the appellee, J. R. Tyson, upon a note which was given by the said J. R. Tyson to plaintiff on September 30, 1890, for the deferred payment on a lot purchased by him. The defendant pleaded two special pleas. In the first plea the defendant set up as a defense, that the instrument sued on was obtained from him upon false and fraudulent representations, made by Thomas S. White, plaintiff's agent, by and through whom the lot mentioned in the complaint was sold to defendant, and for which said instrument was given as part of the consideration. The plea further alleges that the defendant had, through said Thomas S. White, sold some lots in the town of Glasgow in the State of Virginia, to one R. J. McBryde, partly for cash and partly on credit, for the deferred payment of which McBryde's notes were taken; that subsequent to the sale to said McBryde, Thomas S. White, professing to act and acting for plaintiff, as his agent offered to sell to the defendant the lot mentioned in the instrument sued on; that defendant told White that if the notes taken by him from McBryde were good, and McBryde would be able to pay them at maturity, he would buy plaintiff's lot; and thereupon asked White if they were good and collectible; "that thereupon the said White, with the view and purpose of inducing defendant to act therein to his prejudice and buy the said plaintiff's lot, told the defendant that said McBryde was solvent and his notes good and collectible; and that defendant, relying on said statement and believing it, entered into said transaction and purchased said plaintiff's lot for $1,800 as above stated, and paid to said White for plaintiff the sum of six hundred dollars

cash, and gave his two instruments in writing each for
$600, and due respectively six and and twelve months
from the 30th of September, 1890, with interest, as
stated in said instrument sued on, and received from
plaintiff, through said White, a deed for said lot, and ex-
ecuted and delivered a mortgage to secure said 'credit pay-
ments on the lot so bought.'' The plea then averred
that the said representations and statements so made by
said White were false and fraudulent, and were made to
induce, and did induce, said defendant to buy the lot
from plaintiff; that McBryde was then, and still is en-
tirely insolvent, and unable to pay his notes, and that
upon the discovery of the said fraud practiced upon him
by the said White, the defendant refused to pay the
notes sued on, and offered to rescind the purchase of said
lot from the plaintiff, and offered to make a deed recon-
veying the lot to plaintiff, but that the plaintiff refused
to rescind. In the second plea the defendant averred
''that he was at the time of said purchase in the town
of Glasgow, but a stranger there and unacquainted, be-
ing then and since a resident and a citizen of the State
of Alabama, and that while so in said town of Glasgow
temporarily, the said lot so bought by defendant was
offered for sale to him by one Thomas S. White, as a
real estate agent, as the property of the plaintiff for the
said sum of $1,800, the said White professing to act as
the agent of said plaintiff in offering said lot for sale to the
defendant. That defendant had theretofore sold some lots
he had in said town of Glasgow, through the said White
as his agent, to one McBryde, and then had said McBryde's
note given for said lots so sold to him for the sum of
$1,500, but defendant was unacquainted with the said
McBryde and knew nothing of, and had no information
concerning, his pecuniary ability; and when said White
offered to defendant the said plaintiff's lot, defendant de-
clined to buy unless he could rely upon being able to col-
lect his said debt from said McBryde, which was then not
due, to apply the same in paying for the said plaintiff's lot,
and so stated to said White; that thereupon the said White,
to induce the defendant to buy the said plaintiff's lot
from him, represented and stated to the defendant that
the said McBryde was entirely solvent, and that defend-
ant's said debt was entirely good and would be paid,
and that defendant thereupon, relying upon the said rep-

resentation, concluded with said White, as agent for plaintiff, the said purchase of plaintiff's said lot, for the said sum of eighteen hundred dollars. Defendant avers that said White, when he made said representation to defendant, was well acquainted with said McBryde, and knew his pecuniary condition, and that he was unable to pay defendant's said debt against him; and defendant avers that the said representations were false, and made to induce, and they did induce, the defendant to make the purchase of said lot from the said plaintiff." The defendant further alleged in said plea that McBryde was, at the time of such representation, in fact insolvent, and that after discovering his insolvency, he offered to rescind the contract of purchase, and reconvey to the plaintiff all right, title and interest which was invested in him, but that the offer was refused by the plaintiff. The plaintiff demurred to these special pleas on several grounds, which may be summarized as follows: 1st. That they failed to show that White was the agent of the plaintiff, either by right of appointment or subsequent ratification by plaintiff. 2d. That said pleas show that the statements made by said White as to the solvency of said McBryde was the opinion of said White. 3d. That the representations therein alleged to have been made by said White to the defendant, as to the solvency of McBryde, did not constitute such fraud as would vititate the transaction. These demurrers were overruled, and issue was joined on the pleas.

On the trial of the cause, as is shown by the bill of exceptions, the plaintiff introduced in evidence the instrument sued on, which was in words and figures as follows: "$600.00. Glasgow, Va., Sept. 30, 1890. Twelve months after date, or earlier at my option, I bind myself to pay to G. M. Williamson the sum of six hundred dollars, with interest from date, value received, being the second deferred payment on lot 5, in block 164, in town of Glasgow, Va. conveyed to——by deed of even date. I hereby waive the benefit of my homestead exemption as to this obligation. Given under my hand and seal this the 30th day of September, 1890. [Signed] J. R. Tyson, (L. S.)"

The testimony for the defendant tended to show that he went to Glasgow, Virginia, for the purpose of having a settlement with Thomas S. White & Company, a

real estate firm who had been attending to some busines
for him; that in the making of this settlement there was
turned over to him two notes of one R. J. McBryde, for
deferred payments due upon a lot sold to McBryde by
White & Co. for defendant; that after the settlement,
Thomas S. White, one of the members of the firm of
Thomas S. White & Company, as agent of G. M. Wil-
liamson, proposed to sell to the defendant a lot owned by
said Williamson; that he, the defendant, told White that
he would purchase the lot if R. J. McBryde was solvent,
and the notes given by him would be paid at maturity;
that thereupon Thomas S. White told him that McBryde
was solvent, that the notes would be paid at maturity,
and that, not being a resident of the town, nor acquaint-
ed with McBryde or his financial condition, the defend-
ant was induced by the representations of Thomas S.
White, as to the solvency of McBryde, to make
the purchase of the lot owned by the plain-
tiff from White, as the plaintiff's agent, and that the
instrument sued on was the last one of the two notes
given for the deferred payment, the first note having
been paid.   The deposition of R. J. McBryde who was
a witness in behalf of the defendant, was introduced in
evidence, and the witness testified therein to his own in-
solvency, and further testified that at the time of the
execution of the notes his financial condition was
known to Thomas S. White.   During the examination
of the defendant as a witness in his own behalf, he was
asked: "Did White make any representations as to
the solvency of said McBryde?"   The plaintiff objected
to the question, because the same was illegal, irrelevant,
and because McBryde's solvency or insolvency had noth-
ing to do with the case at issue.   This objection was
overruled, and the plaintiff duly excepted.   In answer
to the question, the defendant, as a witness, answered:
"that the said White assured him that McBryde's notes
were perfectly good and would be paid at maturity."
The plaintiff moved to exclude this answer from the
jury, on the same ground as interposed to the question,
and duly excepted to the court's overruling this motion.
The defendant as a witness further testified, that he did
not employ White as his agent, and had never paid him
any commissions.   McBryde was shown to be insolvent,
and it was also shown that his notes to defendant had
never been paid.

The testimony for the plaintiff, which was introduced in rebuttal, was in conflict with that of the defendant as to the representation of White being the agent of the plaintiff; and tended to show that White was not employed as the agent of the plaintiff for the sale of the lot, but that the lot was in the hands of one Brenneman as his agent; that White came to Brenneman to purchase said lot, and, upon being told the price of the lot, said that he would take it; that Brenneman as agent of the plaintiff had all his dealings with White, and that the deed from the plaintiff to the defendant was delivered by Brenneman to White, who afterwards gave the instrument sued on to Brenneman as the agent of the plaintiff. White himself testified, that he was not employed by the plaintiff as his agent to sell the lot for which the instrument sued on was given, but acted in the transaction as the agent of the defendant. Brenneman, as a witness, testified that the plaintiff paid him the commissions for the sale of the lot, which commissions he, Brenneman, divided with White, in accordance with the custom and usage between real estate agents.

The court in its oral charge, among other things, instructed the jury as follows: "If Mr. White acted for some one else, whether the some one else knew it or not, and the some one else accepted the fruits of the transaction, then such person is bound by the acts of the person acting as agent." The plaintiff excepted to this portion of the court's general charge, and also excepted to the court's refusal to give each of the following charges requested by him: (1.) "If the jury find from the evidence that White was not the agent of Williamson in the negotiation and sale of the lot, they must find a verdict for the plaintiff." (2.) "If the jury find from the evidence that White was the agent of Tyson, on the day of sale of the lot in question, in other real estate transactions, the jury, in the absence of evidence to the contrary, may imply that White was the agent of Tyson in the negotiations for said lot, and if they do this, they must find a verdict for the plaintiff." (3.) "If the jury find from the evidence that in a settlement made with White by defendant previous to the sale of the lot in question, he accepted McBryde's notes, the damage resulting to him was not by the representations of White, but by his acceptance of McBryde's notes." The court

at the request of the defendant gave the following written charges to the jury, and to the giving of each charge the plaintiff separately excepted : (1.) ''That if White in dealing with Tyson with reference to the sale of plaintiff's lot acted as plaintiff's agent, whether employed so to act or not, or known to have so acted or not, then the plaintiff is bound by all acts of White in effecting the sale ; and .if the defendant was induced to make the contract by a false representation made by White as to the solvency of McBryde, on which Tyson relied, in contemplation of law it is the same as if plaintiff had made such representations personally, since the plaintiff claims the benefit of the transaction.'' (2.) ''It makes no difference that Williamson did not employ White as agent, or that he did not know of his false representations, if he did in fact act in dealing with Tyson as such agent, and did in fact make false representations to induce Tyson to buy the lot, on which Tyson relied and acted, and the plaintiff, after it is known, claims and holds the benefit of the fraud perpetrated by White, this is a ratification and approval of the agency '' (3.) ''If White professed in dealing with Tyson to act for Williamson, whether authorized or not, Williamson adopts the agency when he claims the benefit of the transactions effected by White.'' (4.) ''McBryde's deposition as to his pecuniary condition is evidence which may be considered on the question of his solvency, and insolvency does not have to be shown by a judgment and return of no property.'' (5.) ''On the question of who White acted for in the particular transaction, the jury may and should look at all the evidence, and in this connection should consider who White got his pay from, and whom he asked to pay him, and the evidence that White had authority to sell the lot in question, if such is the evidence.''

There was judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

EDWARD A. GRAHAM, for appellant.—1. There can not be an agent without an appointment of some character, and it is a rule of law that no one can become an agent without the consent of the principal.—1 Amer. & Eng. Encyc. of Law, 336, subdiv. 4; Ewell's Evans'

[Williamson v. Tyson.]

Agency, 22. The appointment must be clearly expressed, "or it may be implied from particular circumstances." Ewell's Evans' Agency, 23.

2. "When a person deals with one who professes to be agent for another, the person contracting with him is bound to know the extent of his authority." *Fisher & Johnson v. Campbell*, 9 Port. 210; *Van Eppes v. Smith*, 21 Ala. 317; *Lawrence v. Randall*, 47 Ala. 240; *Schimmelpennich v. Bayard*, 1 Peters 264. The only way in which an agency can be established, where the question of its existence is directly involved, as in the case before us, is, by tracing it to its source in some word or act of the alleged principal. An agent can not confer authority upon himself.—Mechem on Agency, § 100.

3. It is not competent to prove the supposed authority of the agent for the purpose of binding his principal, by proving what the agent said or did in the matter without tracing the authority by evidence *aliunde* to the principal. Nor is it competent to prove a supposed authority of any kind as against the person from whom such authority is claimed to have been received, by proving the previous statements of the person who, it is claimed, had attained such authority.—Mechem on Agency, § 102. "Neither the declarations of a man, nor his acts, can be given in evidence to prove that he is the agent of another," unless there is introduced upon the trial other evidence which tends to show such agency.— *Poore v. Magruder*, 24 Grat. 197; *Smith v. Betty*, 11 Grat. 752; *Buist v. Guice*, 96 Ala. 255; *Gibson v. Snow*, 94 Ala. 346; *Womack v. Bird*, 63 Ala. 500; *Tenn. R. T. Co. v. Kavanaugh Bros.*, 93 Ala. 324; *Richards v. Miller*, 56 N. Y. 574; *Starin v. Genoa*, 23 N. Y. 439; *Howard v. Norton*, 65 Barb. 161.

4. The burden of proving the agency of White was upon the defendant; and if he failed to do so, according to the established rules of law, he must fail in his defense.— *Waring v. Moseley*, 22 Ala. 667. If the representations as to the solvency of McBryde were false, they were simply the opinion of the agent.

W. A. Gunter and J. M. Chilton, *contra*.—The fact of agency can not be shown merely by acts or declarations of an agent; but where one acts as the agent of another, although he may be wholly unauthorized, or

[Williamson v. Tyson.]

although there may be no expressed ratification, yet if the person for whom he professes to act accepted the fruits of the transaction and becomes, himself, the actor in the effort to enforce the contract made in his behalf by such unauthorized person, he becomes bound by every fraudulent representation made by such unauthorized agent, as if it had been made by himself; and this, whether he had knowledge of the fraud or not.—*Atwood v. Wright*, 29 Ala. 346; *Elwell v. Chamberlin*, 31 N. Y. 611; 1 Amer. & Eng. Encyc. of Law, 434, and cases cited in note 5.

COLEMAN, J.—Suit by appellant to recover upon a note given for the purchase of land. The defendant as an answer to the demand pleaded two special pleas, in which it is averred that the defendant purchased the lot of land through one Thomas S. White, who was the agent of plaintiff, or professed to be the agent of plaintiff, and had authority to sell the lot, and that he, the defendant, was induced to make the purchase by the false and fraudulent misrepresentations of said White. The facts and circumstances constituting the alleged fraud are set out in the pleas. The plaintiff demurred to each of those pleas, assigning various grounds of demurrer, all of which were overruled, and this ruling is assigned as error.

The general rule of law, that one who deals with an agent, is bound to know the extent of his authority is fully recognized, and one absolutely necessary to the protection of a principal in all actions brought against him founded upon contracts made by an agent. The doctrine is equally as well established and rests upon sound principles, that a principal who seeks to avail himself of a contract made by another for him, whether by an appointed or a self-constituted agent, is bound by the representations made, and methods employed by the agent, to effect the contract. We think these principles sustained by the following authorities: *Elwell v. Chamberlin*, 31 N. Y, 611, 619; *Atwood v. Wright*, 29 Ala. 346; *Haskell v. Starbird*, 152 Mass. 117; 23 Amer. St. Rep. 809; *Busch v. Wilcox*, 82 Mich. 336; 21 Amer. St. Rep. 563; *Griswold v. Gebbie*, 126 Pa. St. 353, 12 Amer. St. Rep. 878, and note. The plea alleges that White represented that McBryde was solvent. This is the repre-

sentation of a fact, and not the expression of an opinion. There is no demurrer directed to that part of the plea, which avers that he represented. that the notes would be paid when they became due, and we do not decide as to the character of such a representation. Under section 2690 of the Code "no objection can be taken or allowed, which is not distinctly stated in the demurrer." We hold that the plea was not subject to any of the grounds of demurrer which were assigned, and that the court did not err in overruling them.

The principles of law invoked by the appellant, that agency cannot be established by the declarations of a party would be pertinent and conclusive, if the principal was defending against a contract alleged to have been made by his agent, but here the principal is suing upon the contract, and thereby ratifying the methods used and inducements held out to effect the contract. The theory of the defense as set up in the plea is, that the lot was purchased through White, as the agent of the owner of the lot, and the evidence of the defendant Tyson tends to support this defense. The suit upon the contract is a ratification of the declarations and methods used to induce the contract. These declartions we think also admissible as *res gestae*. Of course, if the jury should find that White represented Tyson in the purchase of the lot, and not the plaintiff, the owner of the lot, and made no statements or representations as the agent of the plaintiff to induce Tyson to make the purchase, and what was said in regard to McBryde by White was as agent or friend of Tyson, the defense would fail, and the plaintiff would be entitled to recover. This is the question in the case, and it must be determined by the jury.

There are some other assignments of error upon the ruling of the court in the admission and exclusion of evidence, which have not been insisted upon in argument, and which we presume have been waived.

The charge given by the court, may be somewhat indefinite in its terms, but the principle of law asserted is in accordance with our views of the law.

The first charge requested by the plaintiff was properly refused. It was calculated to mislead and ignored material evidence in the case. Whether White had authority from Williamson to sell the lot or not, if the sale

was effected by White as his agent, a suit upon the contract is a ratification or adoption of his agency. The second charge requested was properly refused. There was evidence tending to show that White acted as the agent of the plaintiff in effecting the sale upon which the suit was brought. The third charge requested is incorrect in law, invades the province of the jury, and assumes to determine the question at issue.

The charges given at the request of the defendant with the exception of charge number five accord with the rules herein declared, and are free from error. We are of opinion that the court erred in giving charge No. 5. In the first place it gives undue prominence to the single fact as to who paid White for his service. In the second place, the charge was calculated to induce the jury to draw an unauthorized inference from the evidence, in regard to the fact of the payment of White. The uncontradicted evidence shows in point of fact that White had no authority to sell the lot. The plaintiff owned the lot. Brenneman was a real estate agent, and had the lot in charge to sell. That White was also a real estate agent. That it was the custom of real estate agents, when one had a lot to sell, and another procured a purchaser, the commissions for selling were divided, between the two agents, and that under this rule Brenneman, the agent, who had the lot for sale, divided his commissions with White. This is the entire evidence in in regard to the payment of White, and certainly there is nothing here, which would, in any manner, authorize the jury to infer, that because White was not paid by Tyson, or that because White was paid by Brenneman, he was, therefore, the agent of the plaintiff. The charge was calculated to mislead the jury, was erroneous in the inference they were impliedly instructed to draw from the facts, and should not have been given.

Reversed and remanded.