GOWER v. WIESER.

1. Vendor and Purchaser—Fraud—Promises.

Promises to a couple of agent, misrepresenting his principal as wealthy land owner, that principal would erect filling station and barbecue stand and employ husband as manager and would resell lots at profit for which couple's farm was taken as down payment, made with no intention of performance, *held*, fraudulent in suit to set aside a deed.

2. Principal and Agent—Fraud of Agent—Knowledge and Liability of Principal.

Principal becomes liable for fraud of agent by keeping benefits of transaction after learning of agent's fraudulent misrepresentations and promises, whether he knew of such fraud at the time of its commission or not.

3. FRAUD—PRINCIPAL AND AGENT—RETENTION OF BENEFITS.

Liability of principal who keeps benefits of transaction induced by agent's fraudulent misrepresentations and promises is enforceable in action at law for fraud and deceit or by bill to rescind.

4. EVIDENCE—FRAUD—SIMILAR MISREPRESENTATIONS TO OTHERS—INTENT.

Evidence of similar misrepresentations made by agent to other parties held, admissible on issue of agent's intent in suit against his principal to rescind land contracts.

5. COSTS—BRIEFS.

No costs are allowed to appellee who failed to file brief on appeal in suit in equity notwithstanding affirmance of decree.

Appeal from Saginaw; Browne (Clarence M.), J. Submitted June 5, 1934. (Docket No. 4, Calendar No. 36,628.) Decided October 1, 1934.

Bill by Burt H. Gower and wife against Frank Wieser, Frank Wieser & Company, Allard Land Company, Wieser & Froelich, F. & M. Land Company, Hubert Land Company, Foresight Land Company, Michigan corporations, and Fobes C. Jewell to set aside a deed given by plaintiffs to defendant Wieser, for an injunction, to void a mortgage given by defendant Wieser to defendant Jewell and for other relief. Decree for plaintiffs setting aside deed from plaintiffs to defendant Wieser, giving a money judgment against all defendants except Jewell, and affirming the mortgage to Jewell. All defendants except Jewell appeal. Affirmed.

*Henry E. Naegely,* for appellants.

EDWARD M. SHARPE, J. Plaintiffs bring a bill in equity to rescind certain land transactions with defendants on the ground of fraud.

Burt H. Gower and his wife, Minnie B. Gower, have resided near the village of Oakley, Saginaw county, Michigan, for more than 20 years, Gower having been a rural school teacher for about 10 years and since then engaged in farming. Plaintiffs owned an 18-acre farm of the value of about $6,500. In 1927 Gower met one Jahnke, who represented himself as the agent of Frank Wieser & Company and showed Gower cards and advertising matter stating that Jahnke was one of the divisional managers of that firm. Jahnke represented Frank Wieser & Company to be the owner of extensive and valuable real estate holdings in Detroit and suggested that Gower exchange his farm for two Detroit lots, the company to pay the difference in cash. About September 20, 1927, Gower accompanied Jahnke to Detroit, went to the office of Frank Wieser in the Lafayette Building, and then visited the subdivisions known as Foresight Park Subdivisions No. 1 and No. 2, Hubert Park Subdivision, and Allen Business Park Subdivision, in Ecorse and Taylor townships, Wayne county. Gower was shown a price list and picked out 13 lots priced from $1,300 to $1,500 each. On returning to Wieser's office, he signed an application for the purchase of these lots on land contracts providing that the farm was to apply as a down payment and to cover the first two years of monthly payments. Gower was assured by Jahnke that he would never need to make any further payments on the lots as they would be resold at a large profit to him within that length of time.

The following day Gower returned to Oakley where his wife signed the application. On September 23, 1927, Jahnke came to the Gower home with the 13 land contracts in duplicate and a deed to the farm running to Frank Wieser. However, none of

the land contracts named Wieser as vendor—several named the Allard Land Company, some the F. & M. Land Company, others Wieser & Froelich, and still others the Hubert Land Company. The contracts were already signed on behalf of the various corporations by Frank Wieser, president, and August Froelich, secretary. Before signing the land contracts, plaintiffs asked for some written assurance that the lots would be resold at a profit within two years. The parties then went to the office of Clarence Brainard, a notary public and justice of the peace, who drew up an agreement in the form of a guarantee of $7,500 payable in two years and a promise to resell the 13 lots for the interest of the Gowers. This agreement was signed by the Gowers and "Frank Wieser Company, by Edward Jahnke." Jahnke told plaintiffs that he had a power of attorney from Wieser giving him authority to sign. Thereafter the deed and land contracts were completed and the documents delivered. The value of the farm, $6,500, was distributed *pro rata* on the contracts as down payments and advance payments of future instalments and interest.

Some time in December, 1927, Jahnke again came to the Gowers and sold them two more lots in Allen Park. Jahnke told the Gowers that Frank Wieser & Company would erect a filling station and barbecue stand on these lots and would employ Gower as manager at $50 a week. For contracts on these lots, priced at $3,000 and $2,800, the Gowers paid $2,298 in cash. This was credited as down payments on the two lots of $600 and $560 respectively and the balance as advance payments and interest.

In June, 1928, the Gowers learned that the lots were worth not more than a third of the contract prices. Gower then called at Wieser's office, showed

him the resale agreement and demanded that he perform. Wieser denied any liability, saying that Jahnke alone was responsible, but assured Gower that Jahnke would perform and that plaintiffs would lose nothing on their lots. Thereafter the Gowers did nothing until time for performance of the agreement, September 23, 1929, when they again demanded performance. Upon refusal, the Gowers filed this suit for rescission of all the transactions and restitution to plaintiffs of their farm and cash payments.

In the meantime Wieser had mortgaged the Gower farm for $2,000 to one Jewell and then sold it on land contract to one Kendzierski, receiving payments thereon amounting to $2,461.68. When this land contract became in default, the Gowers bought out the vendee's equity to protect themselves and continued making payments until the bringing of this suit.

On the trial it appeared that there is no partnership or corporation known as Frank Wieser & Company and that Frank Wieser has been doing business under that name without registering it as an assumed name; that Frank Wieser owns no real property in his own name or in the name of Frank Wieser & Company; but that Frank Wieser is the president and principal stockholder in each of the corporations Allard Land Company, Hubert Land Company, F. & M. Land Company, Wieser & Froelich, and also of the Foresight Land Company, which is a merger of the two corporations last named.

Plaintiffs alleged as grounds of fraud the oral and express written representations of defendants that they would resell the 13 lots at a profit to plaintiffs, the oral representation of defendants that they would erect a filling station and barbecue on plain-

tiffs' lots in Allen Park and hire plaintiff Burt Gower as manager thereof; the exorbitant value placed on the lots; and the crediting of a large part of the exchange value of plaintiffs' farm and the cash payment on the two Allen Park lots toward interest not yet due without the knowledge of plaintiffs and contrary to the understanding of the parties.

The lower court found for plaintiffs and set aside the deed of the farm to Wieser, set aside the land contracts, and ordered defendants (except defendant Jewell) to reimburse plaintiffs the sum of $2,298 paid on the Allen Park lots, the sum of $2,461.68 received on the Kendzierski contract, and interest, also the sum of $2,000 and interest received by defendants on the Jewell mortgage. The court declared this mortgage a valid lien on the land.

Defendants (except defendant Jewell) appeal on the grounds that the contract price of the lots was not excessive, that Jahnke had no authority to bind any of the defendants on the resale agreement, that there was no evidence of fraud, that evidence of similar resale promises in collateral transactions by defendants was incompetent and immaterial, and that the corporations could not be held liable for the fraud, there being no showing that Jahnke was authorized to represent them.

The trial judge found as a fact that plaintiffs were induced to enter into these transactions through fraud practiced upon them by defendants' agent. We are satisfied from an examination of the record that the misrepresentations and promises of the agent were in large measure the moving cause in inducing plaintiffs to enter the transaction. Promises made with no intention of performance are fraudulent. *Van Dellen* v. *Van Dellen,* 259 Mich.

275; *Conger* v. *Thomas & Lane,* 258 Mich. 702; *City Investment Co.* v. *Zimni,* 255 Mich. 388; *Kefuss* v. *Whitley,* 220 Mich. 67; *Ward* v. *Cook,* 158 Mich. 283; *Merrill* v. *Allen,* 38 Mich. 487; note in 51 A. L. R. 63.

In two of these cases the circumstances of fraud were very similar to those in the present case. In *Kefuss* v. *Whitley, supra,* the plaintiff was a rural banker and business man who was induced to buy from defendants a large subdivision in another county on the oral promise that defendants, experienced real estate operators, would undertake to manage the subdivision, sell the lots on commission, and make plaintiff a profit of $100,000 on his $25,000 investment with no necessity for further payments on his land contract. In a suit for rescission, it was found that defendants' promises were made in the expectation that plaintiff would rely upon them and with no serious intention to perform. Relief was granted.

In *Conger* v. *Thomas & Lane, supra,* the plaintiff, a woman inexperienced in real estate, had been induced to buy a lot in Windsor just prior to the opening of the Ambassador bridge at a contract price of $12,725 on the promise that she would never have to pay more than the down payment and that defendants would resell the property before further payments became due. The circumstances were such as to show bad faith on the part of the defendants and the plaintiff's bill to rescind was allowed.

That the fraudulent misrepresentations and promises in the instant case were made by Jahnke without the knowledge of his principal is immaterial. Jahnke was the agent of defendant Wieser, who in turn was the president and agent of the different corporations involved and the corporations have received the benefit of the transaction. Whenever

a transaction has been carried out through the fraud of the agent, the principal becomes liable for that fraud by insisting upon retaining the benefits of the transaction after learning of the fraud, regardless of whether he knew of the fraud at the time. Such liability of the principal may be enforced either in an action for damages for fraud and deceit or by a bill to rescind.

In *Bertha* v. *Regal Motor Car Co.*, 180 Mich. 51, 57, 58 (8 N. C. C. A. 460), this court said:

"It is a proposition of law too fundamental and too well established to require a citation of authorities that, if a party adopts even unauthorized acts of another, and has received and accepted benefits accruing therefrom, he thereby adopts and ratifies the instrumentalities by which the results were obtained, and is estopped from denying that the agent was authorized to act."

In *Upell* v. *Bergman*, 246 Mich. 82, 87, it was said:

"If Brillinger (the agent) perpetrated a fraud on the plaintiffs in the manner alleged in their bill of complaint, the Bergmans, as principals, must be held responsible for the act of their agent even though they were not aware of his fraudulent conduct. They cannot profit by his fraud."

Other cases to the same effect are: *Busch* v. *Wilcox*, 82 Mich. 315, rehearing denied 82 Mich. 336 (21 Am. St. Rep. 563); *Krolik* v. *Curry*, 148 Mich. 214; *Moynes* v. *Applebaum*, 218 Mich. 198; *Plate* v. *Detroit Fidelity & Surety Co.*, 229 Mich. 482; *Chaffee* v. *Raymond*, 241 Mich. 392; *Lane* v. *Wood*, 259 Mich. 266.

The defendants also contend that the court was in error in admitting evidence of similar representa-

tions to third parties. We cannot agree with defendants upon this contention. In *Baloyan* v. *Furniture Exhibition Building Co.*, 258 Mich. 244, a lessee's action against a lessor for false representations inducing execution of the lease at an excessive rental, we held that evidence of similar representations to another was competent on the issue of the intent of the person making such representations. Accord, *Bentley* v. *Shifflet, Cumber & Co.*, 238 Mich. 5; *Jordan* v. *Miller*, 232 Mich. 8.

The decree in the circuit court is affirmed. Inasmuch as plaintiffs have not filed a brief in this court, no costs will be allowed.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD. WIEST, BUTZEL, and BUSHNELL, JJ., concur.