GANDY *v.* COLE

OPINION OF THE COURT

1. PRINCIPAL AND AGENT—ACTS OF AGENT—LIABILITY OF PRINCIPAL —FRAUD.

   A principal can be held liable to third persons for the fraud of his agent if it is found that he placed the agent in a position where the agent could defraud third persons while apparently acting within the authority granted by the principal.

2. PRINCIPAL AND AGENT—ACTS OF AGENT—LIABILITY OF PRINCIPAL —FRAUD.

   Defendant did not place his agent in a position to defraud plaintiff where plaintiff should have known that defendant's agent lacked authority to manage plaintiff's personal financial affairs because defendant's business was highly specialized, providing only management services for gasoline stations.

3. PRINCIPAL AND AGENT—ACTS OF AGENT—LIABILITY OF PRINCIPAL —BUSINESS CARD.

   A principal who allowed an agent to give plaintiff a business card indicating he was associated with the principal as a "business counsellor" did not place the agent in a position to defraud the plaintiff in her personal finances where the

REFERENCE FOR POINTS IN HEADNOTES
[1–12] 3 Am Jur 2d, Agency §§ 261–286.

business operated by the principal was one of specialized services for gasoline stations, not management of the general financial affairs of clients.

4. Principal and Agent—Position of Trust—Acts of Agent—Liability of Principal.

A principal will not be liable for fraudulent acts of his agent from which he received no benefit, even in a case where an agent has been placed in a position of trust, if the agent was dealt with in a personal capacity and not as an agent.

5. Principal and Agent—Antisocial Propensities—Acts of Agent—Liability of Principal.

A principal who knows, or should know, of his agent's antisocial propensities may be liable if he places the agent in a position where he can damage others.

6. Principal and Agent—Antisocial Propensities—Knowledge of Principal.

A principal does not know an agent is engaged in antisocial activities merely because he knew the agent had made investments large in relation to his salary where the principal had reason to believe the agent might have other income.

7. Principal and Agent—Misdealings of Agent—Notice—Signature on Check.

A payment by check from one of a principal's customers signed by the principal's agent was not sufficient notice to inform the principal that his agent was involved in the customer's private finances.

8. Principal and Agent—Acts of Agent—Ratification.

Ratification of an agent's fraudulent acts by the principal cannot occur unless it is found that the acts complained of were done, or professedly done, on the account of the principal.

9. Principal and Agent—Acts of Agent—Ratification—Personal Capacity.

A principal cannot ratify the acts of his agent in dealing fraudulently with a third person where the third person dealt with the agent in a personal capacity and not in his capacity as agent.

10. Principal and Agent—Acts of Agent—Liability of Principal.

A principal is not liable to a third person for money received from his agent in good faith, in the ordinary course of busi-

ness, and for valuable consideration even where the money was frauduently obtained from the third person.

### DISSENT BY O'HARA, J.

11. PRINCIPAL AND AGENT—APPARENT AUTHORITY—LIABILITY.

*A principal who permits his agent to present to potential customers a business card representing that the principal is a "business counsellor" and that the card's bearer is his representative should make it his business to know what counselling is being done by the agent.*

12. PRINCIPAL AND AGENT—ACTS OF AGENT—KNOWLEDGE OF PRINCIPAL.

*A principal has a duty to inform himself of all his agent's business activities where he learns his agent has money from a customer of the principal far in excess of any that could accrue for legitimate services rendered.*

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 June 9, 1971, at Lansing. (Docket No. 10385.) Decided August 30, 1971.

Complaint by Mabel Gandy against Allen L. Cole and William Webb for damages from fraud. Judgment for defendant Cole. Plaintiff appeals. Affirmed.

*Dee Edwards,* for plaintiff.

*Kuhn & Scupholm* (by *Otis M. Underwood, Jr.*), for defendant Cole.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

DANHOF, P. J. The plaintiff seeks to recover from Allen L. Cole for alleged damages that were inflicted

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

by William Webb, while an agent of Cole's. After
hearing the case without a jury, the trial court found
for the defendant, and we affirm.

Allen L. Cole operated a business known as Allen
L. Cole & Associates. This business provided
various services to gas station operators and was
limited solely to gas station operators. Cole's em-
ployees, referred to as field men, would call at the
gas stations and examine the operation. They would
do such things as check the inventory and the book-
keeping and make out tax returns. At regular in-
tervals the gas station operator would receive a
statement containing advice on how to improve his
operation. The only time that the field men handled
money was when they collected the fees that were
owed to Cole.

Plaintiff's husband was a subscriber to Cole's
services and William Webb was the field man as-
signed to his gas station. In 1965 plaintiff's husband
was killed in an automobile accident, and from that
time on Webb took an active part in the management
of the plaintiff's finances. At about the time of the
death of plaintiff's husband, Webb gave the plaintiff
a business card that indicated that he was employed
by Allen L. Cole & Associates, business counsellors.

Webb soon took over the management of most of
the plaintiff's money, including the proceeds of the
sale of the gas station and the proceeds of a life
insurance policy on plaintiff's husband. Until the
sale of the station, the Gandy's service station bank
account was continued in the names of the plaintiff
and Webb. Webb wrote a check payable to Allen L.
Cole & Associates on this account. The check was
in payment for the services rendered by Cole.

Webb continued to control the plaintiff's finances
for a considerable time. During this time Webb in-
vested in some race horses in partnership with Cole,

and in some gas stations. It appears that at the present time these investments are without value. Webb undertook the management of the plaintiff's funds with the understanding that he would pay her $300 per month out of these funds. For a time Webb made the $300 payments but later he decreased them to $100 per month. Plaintiff became dissatisfied and made numerous phone calls to Webb seeking an explanation. In late 1965 Webb had ceased to be employed as a field man, but he still maintained an office in Cole's establishment. At no time did the plaintiff contact, or attempt to contact, Cole or any of his employees regarding her finances. In 1967 the plaintiff sought legal advice and this action was commenced. About the time of the commencement of this action William Webb disappeared and as of the date of trial his whereabouts were unknown.

The plaintiff argues that Cole placed Webb in a position where he was able to defraud her, and therefore, Cole must be held liable. The law governing this type of case is stated in 1 Restatement Agency, 2d, §§ 261, 262, pp 570, 571, as follows:

"A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

"A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this."

For Cole to be liable it must be found that he placed Webb in a position where he could defraud the plaintiff while apparently acting within his au-

thority.  The trial court found that Cole had not placed Webb in such a position and we agree.

The business operated by Cole was not one of the general management of an individual's business affairs.  It was highly specialized, providing certain services for gas stations only.  These services were limited to things such as bookkeeping, preparing tax returns, and providing advice regarding the management of the busines.  At no time did Allen L. Cole & Associates undertake to manage their clients' financial affairs in general.  Nor did they ever take possession of their clients' funds, and at no time did they hold themselves out as being willing to undertake such activities.

The plaintiff places heavy emphasis on the fact that Webb gave her a business card that indicated he was associated with Allen L. Cole & Associates, business counsellors.  We do not believe that merely by allowing an agent to use the designation "business counsellor" Allen L. Cole placed the agent in a position which gave him the opportunity to defraud the plaintiff.

We also agree with the finding of the trial court that regardless of the position in which Cole placed Webb the plaintiff did not place any reliance in Allen L. Cole, but relied entirely on Webb in his personal capacity and not as an agent of Cole.  Even in a case where an agent has been placed in a position of trust, his principal will not be liable for fraudulent acts from which he received no benefit if the agent was dealt with in a personal capacity and not as an agent.  This is true even if the agent being employed by the principal is one of the things that inspires confidence in him.  In the Reporter's Notes to § 261 of 3 Restatement Agency, 2d, p 421, the following is found:

"It would seem to be clear that if the agent is purporting to act as an agent and doing the things which

such agents normally do, and the third person has no reason to know that the agent is acting on his own account, the principal should be liable because he has invited third persons to deal with the agent within the limits of what, to such third persons, would seem to be the agent's authority. To go beyond this, however, and to permit the third persons to recover in every case where the agent takes advantage of the standing and position of his principal to perpetrate a fraud would seem to be going too far. Thus, undoubtedly, the fact that a person is a bank cashier causes third persons to trust him; but the bank should not be liable to third persons defrauded by the cashier merely because the position he occupied more readily inspired the belief that he was trustworthy. If he is not dealt with as an agent of the bank but merely as a trusted person because of his position in the bank, there should be no more liability than for any other act of an agent or servant not done within the scope of the employment."

The trial court's conclusion that the plaintiff did not rely on Cole has ample support in the record. The plaintiff had no contact with Cole, she paid Cole no fee, and when she became suspicious she did not attempt to contact Cole. Therefore, it is reasonable to conclude that she did not rely on Cole.

The plaintiff also contends that Cole may be held liable on the theory that he was negligent in continuing to employ Webb after he became aware that Webb was untrustworthy. One who knows, or should know, of a person's antisocial propensities may be liable if he places that person in a position where he can damage others. *Bradley* v. *Stevens* (1951), 329 Mich 556.

The plaintiff bases her argument on the fact that Cole knew that Webb had invested in several gas stations and that Webb and Cole had jointly pur-

chased several race horses. These investments were large in relation to Webb's salary. Cole testified that he believed that Webb's wife was working and that Webb was receiving money from his grandfather's estate. Cole also testified that he was not aware that Webb was involved in the plaintiff's finances. The trial court indicated that he believed Cole and on the question of credibility we defer to the trial court. *Powers v. Huizing* (1968), 9 Mich App 437. Furthermore, we are unable to say as a matter of law that Cole was unreasonable in his belief.

The plaintiff argues that the fact that a payment from Gandy's service station was made by a check signed by William Webb was sufficient notice to inform Cole that Webb was involved in the plaintiff's finances. We cannot agree. It would indeed be a heavy burden on a businessman to require that he examine every check that he receives to determine who had signed it.

The plaintiff contends that Cole ratified Webb's acts by retaining benefits that were received as a result of Webb's fraud after he had learned of the fraud. Plaintiff's argument is based on the fact that in 1965 Cole received $1,040 from Webb and in 1966 Webb loaned Cole $2,000. The loan was subsequently repaid and the $1,040 was received in payment for money that Webb owed Cole. The trial court found that Cole did not have knowledge that he was receiving the plaintiff's money.

As we understand the plaintiff's argument, she contends that the retention of benefits makes Cole liable for all the damages caused by Webb's actions. In considering this contention we must remember that ordinarily the relief given in ratification cases is the same as if the case was a restitution action. See Seavey, Agency, § 38(f), p 73. The receipt of a

limited benefit does not automatically make one liable for all the damage inflicted by a third party. When ratification has taken place the plaintiff often has a choice of remedies. In a proper case he may bring an action for damages for fraud and deceit, or he may seek to rescind a contract. *Gower* v. *Wieser* (1934), 269 Mich 6. The plaintiff may also have the option of bringing an action on the contract, or seeking restitution in a quasi-contract action. Seavey, Agency, § 38, p 71. The amount of recovery may vary depending on what theory the plaintiff proceeds under, but the amount of recovery depends on the particular facts of the case and simply invoking the term ratification does not automatically impose liability to the full extent of the loss regardless of other circumstances.

We turn now to the question of whether it can be said that Cole ratified Webb's acts by retaining benefits. In order to find ratification we must first find that the acts complained of were done, or professedly done, on the account of the principal. See *David* v. *Serges* (1964), 373 Mich 442, *Cudahy Brothers Co.* v. *West Michigan Dock & Market Corp.* (1938), 285 Mich 18; 1 Restatement Agency, 2d, § 82, p 210. As we have previously stated the trial court found that Webb did not deal with the plaintiff as an agent of Cole, but rather acted in his personal capacity. Since Webb was not acting or professedly acting on Cole's account, Cole cannot be held to have ratified Webb's acts.

There is another class of cases to which the term ratification has unfortunately been applied. Although there may be no ratification under agency law, the element of unjust enrichment may be present and thus recovery may be had under the law of restitution. In this type of case the plaintiff has a more limited choice of remedy and only restitu-

tionary relief is possible. See Seavey, Agency, §§ 38, 41, pp 71, 79.

On the facts of this case restitutionary relief is not available to the plaintiff. The money that Cole received from Webb, other than the subsequently repaid loan, was paid in settlement of debts owed by Webb to Cole. When one receives payment in good faith, in the ordinary course of business, and for a valuable consideration the money cannot be recovered even though it was fraudulently obtained from a third person. *Walker* v. *Conant* (1888), 69 Mich 321. See also *Jules S. Bache & Co.* v. *Bank of Detroit* (1933), 261 Mich 436; Seavey, Agency, § 41, p 79.

An illustrative case is *Bearce* v. *Fahrnow* (1896), 109 Mich 315. In that case an agent of the plaintiff made a payment to the defendant which the plaintiff intended to be a down payment on some livestock. The defendant refused to deliver the livestock or return the money, and the plaintiff brought an action to recover his money. The defendant contended that he had applied the payment to an old debt of the agent and therefore he was not liable. The Court found that the plaintiff could recover if the defendant had notice that the money belonged to the plaintiff or if the money had in fact been paid as a part of the purchase price of the livestock whether or not the defendant had notice that the money belonged to the plaintiff. In the case at bar, the trial court found that in fact the money had been paid on a debt that Webb owed Cole, and that Cole did not have notice that the money belonged to the plaintiff. Therefore, the plaintiff cannot recover under either of the theories advanced in *Bearce*.

Affirmed, costs to the defendant.

BRONSON, J., concurred.

O'HARA, J. (*dissenting*). As I understand the limits of appellate review, it is impermissible for the reviewing court to substitute its judgment for that of the trial court on controverted issues of fact unless clearly erroneous. I do not purport to do so here.

I do, however, come to a completely different *legal* conclusion from uncontroverted facts than did the trial judge.

When, as in this case, a principal permits an agent to present to potential customers a business card proclaiming to all and sundry that he, the principal, is a "business counsellor" and that the card bearer is his representative, the principal had better make it his business to know what "counselling" is done, particularly when the counseling results in doing a customer of the principal out of some $15,000.

A faultless principal has no defense against dishonesty, but it does not follow that this accords a principal the right to limitless gullibility. When his employee begins dealing in race horses, lends his principal money, and gives him a check signed by the principal's customer far in excess of any amount that could possibly accrue for legitimate services rendered, I would hold as a matter of law there was an obligation upon the principal to inform himself of his agent's doings *instanter*.

I would vacate the judgment of no cause of action and remand for the taking of testimony as to the amount of the customer's money the principal received from his dishonest employee and enter judgment for the plaintiff in that amount.

Plaintiff should have costs.