WILLIAM C. BUSCH v. GEORGE A. WILCOX.

[See *ante*, 315.]

*Principal and agent—Adoption of contract—Liability of principal for frauds or misrepresentations.*

When a person deals with an authorized agent, he is bound to inquire and ascertain the extent and limit of his authority to bind the principal, and the principal is bound by all acts of the agent within the scope of his authority; and when a principal adopts the contract of a self-constituted agent, who has assumed to act for him without authority, he is bound to inquire and

ascertain the extent to which the self-constituted agent *assumed* to act in his behalf, and the principal, when he becomes such by adopting his acts, is bound by all acts within the scope of the *assumed* authority; and in both cases the liability of the principal extends to the frauds or misrepresentations of the agent committed or made while acting within the scope of such *real* or *assumed* authority.

Application for rehearing. Submitted November 14, 1890. Denied December 5, 1890.

*George A. Wilcox*, in *pro. per.*, and *John D. Conely*, for motion.

CHAMPLIN, C. J. An opinion was handed down in this case October 10, 1890, and the defendant has moved for a rehearing, based upon errors of fact and law. The defendant in person has furnished reasons for a rehearing, in which he states there are several misapprehensions and misstatements of facts as proved upon the trial.

And first he calls attention to the purchase price paid by him for the legal title to the lands purchased by him from Remick. He states that the record shows that he paid Remick $4,000, and allowed McKay one-third of the net profits to be made on the purchase for his interest, and also paid him $1,000 cash bonus in addition. In this the defendant is correct; but, as the amount paid by defendant for the land was not involved in the issue, it was not stated in the opinion.

2. He shows that the Court was in error in stating that—

"Remick had an estimate of the pine timber on the lands made by Robinson & Flynn, which showed that the land contained about 4,000,000 feet of pine."

The record shows, both from the testimony of Mr. Hall and of Mr. Wilcox, that the Robinson & Flynn estimate was made after the purchase by Mr. Wilcox. Mr. Wil-

cox testifies that when he purchased he interviewed both. McKay and Remick,. and each assured him that the land was good for 5,000,000, and a few months after he bought he employed Robinson & Flynn to estimate the pine, and they did so. He testifies:

"I told them I had purchased that land, and would. like to know what there was as near as I could."

This estimate was the one which Hall had with him when he had his interviews with Busch, and showed that their estimate was 3,770,000 feet. This estimate he got from Wilcox. Hall also had Van Riper make an estimate, and that showed the quantity of pine to be 5,162,-000 feet. It is freely admitted that the Court was laboring under a misapprehension when it stated in the opinion that—

"Remick had an estimate of the pine timber on the lands made by Robinson & Flynn, which showed that the land contained about 4,000,000 feet of pine."

Mr. Wilcox contends that—

"The effect of these misapprehensions of the facts is prejudicial to the good faith of the initial purchase having been made on the basis of 5,000,000 feet, and the subsequent holding and dealing with the lands on this basis, supported by Van Riper's estimate, subsequently made.

"It is submitted [says Mr. Wilcox] that, even if these *misstatements* of fact do not materially affect the final judgment of this Court, it is due to the defendant that they should appear correctly in the opinion and published report."

We think the defendant is entitled to have it appear that when he purchased he was told by McKay and Remick that the land was good for 5,000,000 feet of pine; and that he relied upon such statement; and that after he purchased he had a desire to know what there was on the land, and procured Robinson & Flynn to estimate the

pine; and that they did so; and that their estimate showed him that there was 3,770,000 feet of pine upon the land. We think these facts can only have a bearing upon the issue when considered in connection with what was said and done, and the use made of this estimate, by Hall in his interviews with Busch.

The third reason assigned for a rehearing by the defendant is mainly an argument upon the facts, and if addressed to the jury, or if we could decide upon the facts, would not be without great weight. But we cannot reverse a case upon disputed facts, however much we might feel that they impressed us differently from what they did the jury. Now, we might infer and find from the testimony that Busch relied exclusively upon the guaranty of Mr. Hall as to the quantity of pine and of Van Riper's estimate. The testimony is very strong in that direction. But Busch also testifies that he relied upon the representations made by Mr. Hall, and we cannot say that he did not rely upon both. It does not seem to us that, because he would not have entered into the contract without Hall's guaranty, such fact was a waiver of his right to rely upon the prior representations made by Hall, whatever may have been the value of such verbal guaranty in a legal point of view.

The defendant, Wilcox, further insists that,—

"The contract having been made and sent to Wilcox for his adoption without any intimation of there being anything outside of the written contract to which he was committed by signing it, Wilcox at least was entitled to be apprised of these facts immediately upon his coming personally into his relations of principal with Busch."

In other words, if we understand the proposition correctly, it is asserted that when one enters into a contract with a self-constituted agent who has no authority to act for another, and the person for whom the self-con-

stituted agent assumes to act adopts the contract so made
in his name and behalf, thereupon it becomes the duty
of the person so treating with the self-constituted agent
immediately to notify or inform the principal of the
instrumentalities made use of by such self-constituted
agent to induce him to enter into the contract. In a
case where such contracting party is free from fraud or
collusion, and acts in good faith, we do not perceive that
such duty is imposed upon him. He has no right to pre-
sume that the self-constituted agent has misrepresented
facts to him, or that he intends to defraud him. On the
contrary, we think it is the duty of the principal, or the
person who becomes so by adopting the contract made in
his name and for him, to make all needed inquiry and
investigation into the facts, acts, and representations of
the person who, without authority, has assumed to act for
him before he adopts the contract as his own. For, in
adopting the contract, he not only adopts it as written,
but he thereby adopts as his acts all the instrumentali-
ties of the self-constituted agent in obtaining the consent
of the opposite party to enter into the contract. By
adopting the acts of the self-constituted agent, he seeks
to appropriate to himself all the benefits to be derived
from it as fully as if he had himself induced it in the
first instance, and with this he must assume all the lia-
bilities which attach to it. *Wilson v. Tumman*, 6 Man. &
G. 236; *Morse v. Ryan*, 26 Wis. 356; Kerr, Fraud & M.
111; Bigelow, Fraud, 367; Broom, Leg. Max. 708; Whart.
Ag. §§ 89, 90; *Fitzsimmons v. Joslin*, 21 Vt. 142; *Baker
v. Insurance Co.*, 43 N. Y. 283; *Elwell v. Chamberlin*, 31
Id. 611; *Presby v. Parker*, 56 N. H. 409; *Garner v. Man-
gam*, 93 N. Y. 642; *Bennett v. Judson*, 21 Id. 238; *Car-
penter v. Insurance Co.*, 1 Story, 57; *Mundorff v. Wick-
ersham*, 63 Penn. St. 87; *Coleman v. Stark*, 1 Or. 115.
The point made by Mr. Wilcox need not be discussed

further, inasmuch as it was not raised in the court below.

Counsel for defendant has placed in our hands a printed argument in which he gives the reasons why a rehearing should be granted. Upon one point he stands with the Court upon common ground, which is accurately and tersely stated by him as follows:

"In this case there can be no question but that the contract must now be treated as the contract of Mr. Wilcox. He adopted it. He made payments upon it, and he has brought suit upon it."

This leaves the only real contention between counsel and the Court, the question of the extent of the liability of a principal who becomes such by adopting the unauthorized act of a self-constituted agent. We quote from his argument, as showing precisely the position of counsel. He says:

"I want to emphasize the fact that, at the time Mr. Busch was informed that Mr. Hall had no authority to speak in relation to the quantity or quality of the pine, the negotiations were still pending and not concluded; and the fact that when Mr. Busch signed the writing he knew that the representations made by Hall were outside of any authority that he (Hall) might exercise or might assume to exercise. And I want to emphasize the additional fact that Mr. Hall's personal guaranty was not given in addition to representations made within the scope of authority, but Mr. Hall's personal guaranty was given because his representations were without authority and Mr. Busch knew it."

Grant that Busch knew that Hall had no authority from Wilcox to enter into any contract to lumber the land; and also that Wilcox had not theretofore authorized him to make any representations in relation to the quantity and quality of the timber; still he did know that Hall assumed to act as the agent of Wilcox in making the contract,—that he assumed to act for him in executing the contract; and the question recurs, when

Wilcox adopted the contract and made it his own, did he not also adopt as a legal consequence the agency of Hall to its full extent, as to inducements held out by him, and in reliance upon which Busch entered into the contract? We have already stated what we consider to be the law upon this proposition, and referred to some of the authorities by which we think it is supported.

Counsel for defendant also says:

"It is stated in the opinion of the Court that Hall, Wilcox, and Noyes & Sawyer were acting in concert, and not each one for his separate and individual interest, but as a whole. There is no testimony to that effect, but, on the contrary, the testimony is that Mr. Wilcox did not act at all. There is no act of Mr. Wilcox in this case of any sort prior to the reception of the written bargain. That Hall and Sawyer acted in concert is true, but that Wilcox acted is untrue."

We did not attempt to state the testimony from which we deduced the statement referred to, but we think counsel must have overlooked the testimony which Mr. Wilcox gave as follows:

"There was a contract, I believe, that we should put in a part of this timber that coming winter."

The point, however, is not very important, as we are content to rest our opinion upon the obligations and liability of Mr. Wilcox arising from his adopting the contract made by Hall as his agent, and the paramount duty of Wilcox to ascertain the *extent* of the authority assumed and the *means* employed by Hall in making the contract. The law, as we conceive it to be, is this: When a person deals with an authorized agent, he is bound to inquire and ascertain the extent and limit of his authority to bind the principal, and the principal is bound by all acts of the agent within the scope of his authority; and when a principal adopts the contract of a self-constituted agent, who has assumed to act for such principal without

authority, he is bound to inquire and ascertain the extent the self-constituted agent assumed to act in his behalf, and the principal, when he becomes such by adopting his acts, is bound by all acts within the scope of the assumed authority; and in both cases the liability of the principal extends to the frauds or misrepresentations of the agent committed or made while acting within the scope of the real or assumed authority. We entertain no doubt upon the law that should govern the case.

Upon the facts as they are developed by the testimony, we regard it as a close case, and, viewed from Mr. Wilcox's standpoint, it is in some respects one of apparent hardship. But we cannot treat the facts differently from what the jury have found them to be upon the whole testimony; and the court in his charge, which was not excepted to nor was error assigned upon that portion of it, instructed the jury that, as Mr. Wilcox had commenced suit against Busch for damages for not performing the contract, they could not in this suit allow Wilcox anything for failure to perform. His remedy against Busch is therefore left intact for any overpayment, or breach of contract on Busch's part.

We see no reasons for coming to a different conclusion than that first announced, and the rehearing is denied.

The other Justices concurred.