### SOKUP *v.* LETELLIER

1. PRINCIPAL AND AGENT — RATIFICATION OF AGENT'S CONTRACT.
    Defendant contractor, V., not having sufficient credit to purchase materials in erecting a house, applied to defendant L. to furnish lumber as needed, and agreed to assign to L. a mortgage as security. L. sent an agent, F., to examine the mortgaged property, and, relying on his report that the security was ample, agreed to V.'s proposition. From that time all of V.'s negotiations were carried on with F. V. had received estimates from complainants for furnishing certain materials, and notified them that L. would pay them out of the mortgage proceeds. F., who had so agreed with V., informed complainants that this was true. L. had no knowledge of these transactions. An assignment of the mortgage

to L., and a contract collateral to it, authorizing L. to apply the proceeds under the mortgage to the payment of his claim, were delivered to the agent, F. *Held*, that the proceeds from the mortgage should be divided *pro rata* among all these material men, as the accepting of the assigned mortgage by L. was a ratification of the acts of his agent.

2. MORTGAGES—PROCEEDS OF SALE—DISTRIBUTION—DECREE.
Where the circuit judge, upon finding that a mortgage should be subjected to the payment of certain claims, entered a decree requiring the holder of the mortgage to assign to a receiver for foreclosure and sale and distribution of the proceeds among the persons entitled, he was in error in omitting to direct such holder to account to the receiver for interest collected on the mortgage,

3. SAME—ADVERSARY PROCEEDING—COSTS.
Where a mortgage was assigned to defendant L. as security for materials furnished, under an agreement, ratified by L., that it should likewise stand as security for the claims of complainants, also material men, and complainants were obliged to bring suit to subject the mortgage to their claims, the suit was distinctly an adversary proceeding, and costs, as between solicitor and client, were properly not allowed to be deducted from the proceeds of the mortgage before distribution.

Appeal from Kent; McMahon, J., presiding. Submitted February 7, 1900. Decided April 24, 1900.

Bill by Frank J. Sokup and William Reid against Francis Letellier, Abraham Vanden Boogert, and Clara S. Morley to subject a mortgage to the payment of certain claims. From the decree rendered, complainants and defendant Letellier appeal. Modified.

*Rood & Hindman*, for complainants.

*Butterfield & Keeney*, for defendant Letellier.

LONG, J. The bill was filed in this case for the purpose of subjecting a real-estate mortgage held by defendant Letellier to the payment of certain claims held by complainants and some of the defendants for materials furnished for a building erected by defendant Vanden Boo-

123 MICH.—41.

gert, as contractor. The court below filed a written opinion in the case, in which the facts are set out as follows:

"1. In the month of September, 1894, one Carrol Hartman contemplated erecting a building on East Fulton street, in Grand Rapids, Mich. Abraham Vanden Boogert was a contractor and builder in said city, and agreed with Hartman to erect the building.

"2. Before making the contract, Vanden Boogert went to William Reid, a dealer in glass, to Frank J. Sokup, a maker of roofs and galvanized cornices, and to Clara S. Morley, an agent dealing in lumber, and obtained estimates from them for the furnishing of the material for the aforesaid building, in accordance with his contract with Hartman. Hartman had failed in business about two or three years prior to this time, and Vanden Boogert had little property, and for these reasons neither had extensive credit.

"3. The contract price for the building was to be twenty-three or twenty-four hundred dollars. A portion of this Hartman agreed to pay in cash as the building progressed, and to give a mortgage for the balance on property owned by his wife in Spring Lake, Mich.

"4. A contract was finally made between Hartman and Vanden Boogert, and Mrs. Hartman executed and delivered to Vanden Boogert a mortgage on the property aforesaid for the sum of $1,953.

"5. The defendant Letellier was a dealer in lumber in Grand Rapids, and a man of considerable means. Vanden Boogert went to Letellier, and told him of his contract with Hartman, and asked him if he could take an assignment of this mortgage, and furnish lumber for the building as it was needed. Letellier referred Vanden Boogert to one Finegan, who was in his employ in the lumber business, and Vanden Boogert from that time on negotiated with Finegan in regard to the mortgage and furnishing of material. Letellier told Vanden Boogert that he would handle the mortgage providing it appeared that the security was good. In order to ascertain this, Letellier sent Finegan to Spring Lake to examine the property, and Finegan upon his return reported that, in his judgment, the property was worth the amount of the mortgage.

"6. Finegan was in the employ of Letellier on a salary, and it was his duty to attend to business in the office, make sales of lumber in the ordinary course of business, and to collect notes and accounts which had been given

by customers for lumber sold. It was Finegan's custom to carry on the business in the ordinary way, and in all matters of importance or of an unusual character consult with Letellier.

"7. On the 18th day of October, 1894, Vanden Boogert and Finegan went together to the office of Butterfield & Keeney, who were the attorneys and counsel for Letellier. Vanden Boogert executed and delivered to Finegan an assignment of the Hartman mortgage, in the usual form, and also executed and delivered a contract collateral thereto, reciting the facts, and authorizing Letellier, if the mortgage was not paid, to sell and dispose of it, and apply the proceeds to the payment of such sums of money as might then be due and owing from Vanden Boogert to Letellier. These papers, after they had been prepared, were read by the attorney, Mr. Keeney, to Vanden Boogert, and by him were executed without any suggestion or any further arrangement or contract between the parties.

"8. As a matter of fact, without consulting Letellier, without any special authority from him, Finegan agreed with Vanden Boogert that Letellier should take the mortgage, and pay all bills for materials which should be furnished to Vanden Boogert by other parties for the construction of the Hartman building. When Vanden Boogert applied to the agent of William Reid for the glass for said building, he informed the agent of his arrangement with Finegan, and Reid's agent inquired of Finegan by telephone, and was informed by him that such arrangement did exist, and that Letellier was to pay these bills for material out of the proceeds of the mortgage when he should realize upon it; and, in reliance upon such assurance, Reid furnished glass for the Hartman building to the amount of $282.01. Vanden Boogert obtained flooring for the building from Mrs. Clara S. Morley to the amount of $102.48, upon the same conditions and assurances as in the case of Reid. He obtained roofing and material from Sokup to the amount of $150, giving Sokup to understand that Letellier would pay these bills from the proceeds of the said mortgage.

"9. Letellier had no knowledge of these transactions, or of the assurances given to these parties by Finegan. He furnished material for the building to the amount of over $1,200, advanced Vanden Boogert money to obtain material and to pay his employés from time to time, until the amount of the advances made by Letellier on account

of this building was over $1,400. Letellier, also, at other times and on other accounts, advanced money and material to Vanden Boogert, and the amount of the indebtedness of Vanden Boogert to Letellier, at the time this bill was filed, was at least equal to the face of the mortgage.

"10. Letellier was not informed of the situation until a short time prior to the bringing of this suit, when the arrangement made with Finegan was explained to him, and demand made by or on behalf of Sokup and Reid of a share in the mortgage or its proceeds. Letellier insisted that these parties had no interest in the mortgage, that the assignment to him was absolute, and that no arrangement had ever been made by which he was to become liable to Sokup and Reid to the amount of the indebtedness of Vanden Boogert to them. * * *

"The sole question presented by these facts seems to me to be whether Finegan was authorized to make the contract on behalf of Letellier which he did make with Sokup and with Reid."

From these findings of fact, the court below concluded that all the parties must share in the mortgage *pro rata,* —that is, in proportion to the value of the materials furnished by them, respectively; and it was decreed that Letellier assign the mortgage to a receiver to be appointed by the court; that the receiver either sell the mortgage or foreclose it, and pay out of the proceeds the costs in the case; that he then distribute the balance of the proceeds to the parties as above, less the receiver's compensation, to be allowed by the court; and that defendant Letellier pay complainants their statutory costs to be taxed. Complainants and defendant Letellier have each appealed from this decree.

The main contention of counsel for defendant Letellier is that this decree cannot be sustained, for the reason that it attempts to make a contract between parties at variance with the written contract, and that such written contract cannot be changed or varied by parol evidence. Counsel cite many cases to sustain this proposition. Counsel for complainants admit this rule, but insist that the finding made by the court does not violate the rule. In this we think complainants' counsel correct. It appears that Mr.

Hartman, who was without funds, wanted to put up this building. The mortgage was given for the purpose of obtaining the material and labor with which to build it. Vanden Boogert obtained the mortgage in his own name, and the material and labor were furnished by all the parties upon the understanding that the mortgage was taken and held for the sole purpose of security to them. The mortgage was assigned by Vanden Boogert to defendant Letellier, and a contract executed by Vanden Boogert to Letellier, reciting the assignment, and by the terms of which Letellier was authorized to collect the mortgage, and pay himself out of the proceeds. Finegan made arrangements for Letellier with these other parties, well knowing that all the material men were relying upon the mortgage for the payment of their claims. In fact, Vanden Boogert had no other means of getting the materials except by these representations that the mortgage was given for this purpose. Finegan knew this, and the court below found that:

"The condition upon which the mortgage was assigned to Letellier was that the bills of Reid, Morley, and Sokup should be paid by Letellier out of the proceeds of the mortgage, and it cannot be said that Vanden Boogert would have assigned the mortgage on any other terms. If, therefore, Letellier chose to take and keep the mortgage, it was incumbent upon him to carry out the terms of the contract by which it was obtained. He has taken and kept the mortgage, and to that extent he has affirmed the contract. This amounts in law to a ratification of the whole contract which Finegan made."

In support of this the court cites the case of *Busch* v. *Wilcox*, 82 Mich. 336 (47 N. W. 328, 21 Am. St. Rep. 563). In that case it was held that when a principal adopts the contract of a self-constituted agent, who has assumed to act for him without authority, he is bound to inquire into and ascertain the extent to which the self-constituted agent assumed to act in his behalf; and the principal, when he becomes such by adopting his acts, is bound by all the acts within the scope of the assumed authority.

Here Finegan knew of the representations made by Vanden Boogert that this mortgage was to be held for the benefit of all the parties. He was acting as the agent of Letellier. He knew that the assignment was made to Letellier, and that the other parties were relying upon the agreement that they were to be protected. Letellier had left the matter in Finegan's hands, and, when he accepted the assignment of the mortgage, was bound to carry out the agreement made by Finegan by which the assignment was obtained. We think the court was not in error in so holding.

It appears, however, that Letellier had collected interest on the mortgage to the amount of $350. There is not sufficient due on the mortgage to pay all the claims, but the court below directed an assignment of the mortgage to a receiver, and a sale or foreclosure of it by him. The court made no provision in the decree for the payment by Letellier of the interest collected on the mortgage or for his accounting therefor. This should be done. The decree of the court below must be modified in that respect.

The court below decreed that:

"The receiver shall pay out and distribute the moneys that shall come into his hands in the following manner: (1) All expenses of the receivership. (2) The balance received by him, to the amount, in the proportion, and to the persons heretofore mentioned in this decree as entitled to the same, except that the receiver shall deduct from the amount due said Letellier the taxable statutory costs in the case, and pay the same to the complainants or their solicitors, in case the same have not already been paid by said Letellier.

"The matter of the taxation of costs, as between solicitor and client, is denied."

It is the contention of solicitors for complainants that the costs, as between solicitor and client, should be deducted from the fund before any division is made of it. We think not. The case, as between the parties, is strictly an adversary proceeding. It is not different in this respect than would be an action at law to recover from

Letellier the proportion of the proceeds of the mortgage belonging to complainants. It is not like a proceeding instituted for the purpose concerning a fund which is subject to dissipation. The mortgage fund was in no danger. The controversy related solely to the question of whether complainants were entitled to share in the fund. We do not think the rule should be extended to include an allowance in such cases.

The decree below, modified as indicated, will be affirmed. Complainants will recover costs of this court.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., took no part in the decision.