## W. E. DAY, Appellant, v. H. S. MERRICK.

False representations: SALE OF LAND: DEFICIENCY IN ACREAGE: EVI-
DENCE. In this action for false representations as to the num-
ber of acres contained in the farm sold plaintiff, the evidence is
reviewed and held to entitle plaintiff to recover, because of the
fraud practiced both by defendant and his agent, regardless of
whether the land was sold by the acre.

Same: FALSE REPRESENTATIONS OF AGENT: RATIFICATION. By accept-
ing the benefits of the sale the owner of land ratifies the fraud-
ulent representations of his authorized agent and is bound thereby;
especially where he knew, as in this case, what the representations
were.

*Appeal from Wapello District Court.—*HON D. M. ANDERSON,
Judge.

THURSDAY, NOVEMBER 14, 1912.

THE facts are stated in the opinion.—*Reversed* and *Re-
manded.*

*Gillies & Daugherty* and *Hammett & Howard,* for
appellant.

*Tisdale & Heindel* and *W. P. Cave,* for appellee.

SHERWIN, J.—The plaintiff is, and was at the time of the
transactions involved herein, a resident of Randolph county,

1. FALSE REPRE-
SENTATIONS:
sale of land:
deficiency in
acreage: evi-
dence.

Mo , and the defendant was then, and is now,
a resident of Ottumwa, Iowa. In the fall of
1905, and for some time prior thereto, the
defendant was the owner of a farm in
Randolph county, Mo. Hick & Yutz, real estate agents,

residing at Macon, Mo., had charge of this farm as agents of the defendant to the extent, at least, of renting and collecting the rents, and had at one time during the period prior thereto in the presence of the defendant sought to find a purchaser for the land without objection from the defendant. In the fall of 1905, Hicks & Yutz advertised the farm for sale in a local paper, describing it as containing three hundred and thirty-five acres. The plaintiff saw and answered the advertisement, and about the 1st of November, 1905, Mr. Yutz took the plaintiff over a part of the farm and showed it to him, priced the farm at $10,000, and stated that it contained three hundred and thirty-five acres. The farm consisted of a more or less broken tract of land approximately one and one-half miles in length and half a mile wide at its greatest breadth, having a winding creek for a boundary on the northeast side for about three-quarters of a mile. Along the creek were high bluffs covered with timber, while further west the creek turned and crossed the farm from north to south. It is apparent from the record that it would be utterly impossible for any one to determine the nmber of acres in the tract merely by looking at it, or by going over it. Nothing came of the negotiations at that time. In December, 1905, one Aubrey R. Hammett began negotiations for the purchase of the farm through Hicks & Yutz, and several letters passed between them relative thereto. The negotiations proceeded on the basis of $26 per acre for the farm, but Hammett was not satisfied to pay for the land on the basis of three hundred and thirty-five acres, without first knowing that the farm contained that number of acres, and he employed a surveyor to survey and determine the matter. After the survey had been made, and on January 13, 1906, he wrote the letter following, and mailed one copy thereof to the defendant at Ottumwa, Iowa, and another copy to Oswald Hicks, of the firm of Hicks & Yutz, at Macon, Mo.: "H. S. Merrick & Oswald Hicks, Gentlemen: Mr. Williams, the gentleman

I got to survey the Bradshaw farm, has just completed his survey and calculations thereof and makes same more than forty acres short of three hundred and thirty-five acres. The shortage is so great as to suggest a possibility of a mistake, yet he may be correct and if so, I can't stand such a shortage. I am perfectly willing to take the land at $26 per acre and let you name a surveyor and me one and have the two survey the farm and I will pay all the expenses in any way pertaining to the same, but feel sure you would not expect me to pay for forty-odd acres I did not get." On January 22, 1906, Mr. Hammett again wrote Mr. Hicks as follows: "Dear Sir: I think Bradshaw is responsible to you for the shortage in the farm and you are the people to ask for a reckoning. You paid for three hundred and thirty-five acres, it was represented to you as being three hundred and thirty-five acres, you relied upon the representations to your damage and are the innocent injured as it were. Now, it is different with me; I have surveyed and found out that there is a shortage and am not relying upon anybody's representations, but upon my own knowledge and for me to buy your cause of action would be buying lawsuits, a thing I don't want to do." And again, on the 25th day of January, Hammett wrote Mr. Hicks in regard to the land, and sent him copies of two surveys of the farm, both of which showed that there was much less than three hundred and thirty-five acres therein. January 26, 1906, Mr. Hicks wrote Hammett as follows: "Dear Sir: I am in receipt of your field notes in reference to the Bradshaw survey, for which I thank you and would be glad to pay for same if you will send me your bill. . . . All we wish is a corner to start from. . . . I have had a consultation with Mr. Merrick by letter and it is useless to consider or think of getting him to accept less than $8,710 for the farm; however, he might knock off the ten dollars, and assign all cause of action against Mr. Bradshaw to you, if there should be any, or the suit could be brought in our name if necessary, but as a matter of fact I

do not believe Mr. Bradshaw would hesitate to make the shortage good if the matter was brought before him. . . . We have a contract with Mr. Bradshaw upon which this deal was made which calls for three hundred and thirty-five acres without qualification.''

The negotiations between Hammett and Hicks ended at that time. Early in January, 1906, the plaintiff herein again opened negotiations for the farm by correspondence, and on January 20, 1906, wrote Hicks as follows: ''Referring to yours of January 14th, will say that if the farm can be bought between $25 and $26 per acre, I will come and see you. If not, it will not be worth while to consume your time coming up.'' It will be noticed that this letter was written seven days after Hammett had written to the defendant and Hicks, notifying them of the shortage in the acreage of the farm. On January 22d, Hicks wrote the plaintiff as follows: ''We have yours of 20th, 1906. If you will come up, we think there is no trouble in making a deal for $8,710.00, which is $26.00 per acre.'' On the 29th day of January, 1906, the plaintiff and Hicks agreed upon terms for the farm, and Hicks drew a contract covering the matter, which was signed by the plaintiff and forwarded by Hicks to the defendant in Ottumwa, Iowa. The description of the land in the contract was as follows: ''All of the north half of the southeast quarter of section 19, and two hundred and fifty-five acres being all that part of the south half of section 20, that lies south and west of Walnut creek, all in township 55, range 15, containing in all three hundred and thirty-five acres, it being the intention of the said Henry S. Merrick to deed and convey to the said Day all of the interest which the said Herrick may have in and to the lands in the above sections, which were conveyed to the said Merrick by one Thomas H. Bradshaw and wife, Annie L. J. Bradshaw, by their deed of conveyance made on the 15th day of March, 1905, and recorded in Book 75, page 590 of the Records of the Recorder's office of Randolph county,

Missouri.  In other words, the said Merrick is to convey the
identical and exact number of acres to the said Day, which
the said Merrick bought in the above-mentioned deed from
Bradshaw.''  The deed from Bradshaw and wife to Merrick
referred to in this contract conveyed: ''The north half of
the southeast quarter of section 19, township 55, rage 14,
and two hundred and fifty-five acres, being that part of the
south half of section 20 that lies south and west of
Walnut creek  .  .  . and containing in all three hun-
dred and thirty-five acres.''  The eighty acres in section
19 is a full eighty; the shortage being in the tract in section
20.  The contract was sent to the defendant for his approval
and signature, and was received by him.  He did not sign it,
however, but he at once made a deed to plaintiff on the terms
stated in the contract, and forwarded it to Hicks, with au-
thority to deliver same to plaintiff and collect the purchase
price.  Hicks notified the plaintiff, and in due time plaintiff
accepted same and paid the full consideration agreed upon
in the contract.  In his deed the defendant carefully avoided
stating the number of acres in the farm and limited the gen-
eral warranty clause by writing in with a pen these words,
''claiming by, through, or under him.''  It was not until
some time after he had purchased and paid for the farm
that plaintiff learned that the farm did not contain three
hundred and thirty-five acres, and, after he had failed in
an attempt to have the defendant adjust the wrong without
litigation, this suit was brought to recover damages sustained
by reason of false and fraudulent representations.  The evi-
dence was presented to a jury, but at its close the court
sustained defendant's motion for a directed verdict, dis-
missed the case, and rendered judgment against the plain-
tiff for costs.  The plaintiff appeals.  The facts as we have
recited them, and they are without serious dispute, are the
strongest argument that can be made against the action of
the trial court.  The evidence of fraud on the part of Hicks
is practically conclusive.  The evidence tending to show that

he was the defendant's duly authorized agent is ample to warrant a finding that he was such agent.

But, if such were not the case, the evidence of fraud on the part of defendant himself is sufficient to take that question to the jury. The defendant had the contract before him when he made the deed. He was familiar with its contents, and could not help knowing therefrom that the plaintiff was bargaining for three hundred and thirty-five acres, and expecting to get such acreage for the sum that he had agreed to pay for the farm. The defendant at that time knew that the farm did not contain the number of acres named in his deed from Bradshaw and in the contract that the plaintiff had signed, and, having accepted the terms thereof it was for the jury to say whether or not in executing the deed in the manner he did, he was endeavoring to perpetrate a fraud regardless of the acts of his agent Hicks. The evidence tends to support the claim of the plaintiff that he purchased the farm by the acre and not in gross but, whether he did so or not, he is entitled to recover because of the fraud practiced by the defendant himself and by his agent. *Thomas v. Beebe,* 25 N. Y. 244; *Starkweather v. Benjamin,* 32 Mich. 305; *Cawston v. Sturgis,* 29 Or. 331 (43 Pac. 656); *Antle v. Sexton,* 137 Ill. 410 (27 N. E. 691); *McGhee v. Bell,* 170 Mo. 121 (70 S. W. 493, 59 L. R. A. 761.)

Furthermore, there is abundant evidence to sustain the proposition that the defendant ratified the fraudulent acts of his agent Hicks. By accepting the benefits of the transaction, he bound himself by the representations, and particularly is this true where the principal knows what such representations were, as did the defendant here. *Higbee v. Trumbauer,* 112 Iowa, 74; *Lull v. Bank,* 110 Iowa, 537; *Deering v. Bank,* 81 Iowa, 222; *Eadie, Guilford & Co. v. Ashbaugh,* 44 Iowa, 519; *Busch v. Wilcox,* 82 Mich. 336 (47 N. W. 328, 21 Am. St. Rep. 563). That his cause should have been submitted to the jury is very clear to us. See *Lenoch v. Yoss,* 157 Iowa, —.

2. SAME: false representations of agent: ratification.

The judgment is reversed, and the case remanded.
—*Reversed.*