Argued March 8, affirmed March 28, 1916.

# GUARANTY TRUST CO. *v.* DINWIDDIE.*

### (156 Pac. 279.)

**Corporations—Sale of Bonds—Misrepresentations—What Constitutes.**

1.   Where the property of a corporation which was issuing bonds was located in a distant state, misrepresentations by a corporate agent as to its property and indebtedness which could not be discovered by the purchaser without a trip to the foreign state constitutes fraud warranting the purchaser of the bonds in rescinding the contract.

**Corporations—Authority of Agent—Right to Deny.**

2.   In a suit on a contract for subscription to the bonds of a corporation, the corporation's assignor cannot question the authority of the agent who effected the contract for the benefit of the corporation so as to escape liability for the agent's fraud; for, relying on the contract made by the agent, he is liable for the agent's fraud.

**Corporations—Bonds—Assignment—Rights of Assignee.**

3.   A contract to subscribe to corporate bonds being non-negotiable, the assignee has no greater rights than his assignor; hence an assignee of such a contract, though he did not know of the fraud of the agent of the corporation in effecting the contract, cannot enforce the purchaser's agreement.

**Corporations—Contracts to Subscribe—Tender.**

4.   In such case, where the assignor tendered the purchaser the bonds he agreed to buy, the fact that the purchaser did not object to the nature of the tender does not preclude him from setting up that the contract was secured through fraud.

**Corporations—Corporate Bonds—Actions on Subscription.**

5.   In an action on a contract to purchase bonds of a corporation which were falsely represented to be first lien bonds, the purchaser, who was deceived as to the property and indebtedness of the corporation, may show that since the contract the corporation had become bankrupt.

> [As to fraudulent and overissued corporate stock, see note in 87 Am. St. Rep. 847.   As to supplementing stock subscription by proof of collateral oral agreement, see note in Ann. Cas. 1914A, 458.   As to waiver of right to avoid stock subscription, see note in Ann. Cas. 1915B, 790.]

## From Multnomah: JOHN P. KAVANAUGH, Judge.

*On the right to rescind subscription for fraud and misrepresentation, see note to 33 L. R. A. 721.

As to the effect of promoter's fraud on corporation's right against subscriber, see note to 25 L. R. A. 100.

On fraud as ground of relief from subscription to stocks after insolvency of corporation, see notes in 31 L. R. A. (N. S.) 900; L. R. A. 1915D, 168.                                                    REPORTER.

Department 2.    Statement by MR. JUSTICE BURNETT.

This is an action by the Guaranty Trust Company against W. S. Dinwiddie.

It is alleged in the complaint and admitted by the answer that the Tennessee River Coal Company executed an order to sell its bonds, and that the defendant signed the subscription thereto, which are both here set out:

"Bond Offering and Subscription Agreement.

"The Tennessee River Coal Company, a New York corporation, hereby offers, subject to prior sale, $150,-000.00 of its first mortgage six per cent. twenty-year sinking fund gold bonds, of the denomination of $1,000, subject to the following terms and conditions:
"Price.

"1. The price at which said bonds are offered is $850.00 for each $1,000 bond, payable in cash upon the delivery thereof as hereinafter stated.
"Time of Delivery.

"2. The bonds when subscribed for are deliverable by the company upon the demand of the purchaser at any time within one year from the date hereof, and are to be taken up and paid for by the purchasers on demand after one year from the date hereof.
"Oversubscription.

"3. In the event of oversubscription, each subscriber shall be entitled to the number of bonds only to which the number of bonds subscribed for bears to the number of bonds subscribed for by him.
"Bonus.

"4. With each $1,000 subscribed and paid for hereunder the subscriber shall be entitled to receive as a bonus one share of the preferred stock of the Tennessee River Coal Company and two shares of its common stock.
"Power to Borrow.

"5. The subscribers irrevocably agree that the company shall have full power and authority to borrow by means of note or notes, such sum or sums as it desires

and to pledge as security therefor such bonds, stock and this agreement upon any terms and conditions which will enable the subscriber to withdraw and receive their proportionate amount of the said bonds and stock upon payment of the amount of their several subscriptions.

"Assignability.

"6. An assignment of the right to receive and pay for such bonds and stock shall and will be recognized on proper proof thereof, but such assignment shall not release the subscriber hereto from his liability or obligation to pay for said bonds on the default of his assignee.

"Time for Subscription.

"7. This subscription may be closed at the option of the company and without notice after ten days from the date hereof.

"Dated New York, November 30, 1910.

   "[Signed]   TENNESSEE RIVER COAL CO.,

    "By R. F. KILPATRICK, Treas.

"The undersigned hereby subscribe and promise to pay for the number of bonds set opposite our respective names subject to the terms and conditions of the above subscription offer of the Tennessee River Coal Co.

| "Names. | Number of Bonds. |
|---|---|
| "[Signed]   W. S. DINWIDDIE. | $5,000.00." |

The plaintiff claims as assignee of the contract thus formed, and avers that on September 7, 1912, it tendered performance of the agreement, and that the defendant refused to accept the securities and stock or pay his subscription. The latter denies performance of the contract on the part of the plaintiff or its assignor, and states that his signature to the agreement was obtained by means of false and fraudulent representations of the coal company's agent to the effect that it had immensely valuable property; that it had expended $450,000 in development of the same; that

no stock or bonds of the company had been or were being issued except for cash; that the $150,000 mentioned in the offer of subscription was the total issue of such securities, and that they were a first lien on all its holdings, whereas, in truth, only about $200,000 had been expended upon the property; that it was of no real value, and that the full bonded indebtedness of the company was $400,000, one half of which had been issued to its promoters without any consideration except the conveyance of heavily encumbered and substantially worthless land. Further defending, the defendant stated that the only title the plaintiff had to the subscription it sued upon was as security for a note of $80,000 executed in its favor by the coal company, which, however, had been paid; that on or about February 6, 1912, the coal company was duly adjudged a bankrupt, and afterward, about July 30, 1914, the trustee in bankruptcy was discharged, and the estate closed. For a third defense the defendant avers, in substance, that after bringing the action the plaintiff assigned the bonds which it had tendered to him to other parties who presented them to the assignee in bankruptcy as a claim against the estate, with the result that the properties of the coal company were sold and bought in by the then holders of the securities mentioned for a net amount of $2,688.-40, and that, the bankrupt estate having been closed, they no longer represent the obligation of the coal company to pay. Demurrers to the second and third affirmative answers were overruled.

Whereupon the plaintiff filed a reply denying all the new matter in the answer. It also pleads that it made the loan and took the subscription agreement as collateral in good faith without notice or knowledge of any fraud or misrepresentations to the defendant by the

coal company or its officers or agents.   A jury trial resulted in a verdict and judgment for the defendant, and the plaintiff appeals.                  AFFIRMED.

For appellant there was a brief over the names of *Mr. H. K. Sargent* and *Mr. Arthur P. Tifft,* with an oral argument by *Mr. Sargent.*

For respondent there was a brief over the name of *Messrs. Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The fraud relied upon by the defendant consisted in the representations made to him by one Frank J. Kilpatrick, as stated in his answer.   It appears without dispute that R. F. Kilpatrick was the treasurer of the coal company, and by its authority had charge of the business of marketing its bonds.   Frank J. Kilpatrick was his father, and they officed in the same place in New York City.   It is contended by the plaintiff that the latter was not in any way connected with the company and had no authority to represent it.   The testimony of the defendant is clear and explicit in support of his answer about the representations which induced him to subscribe, and there is abundant evidence to take to the jury the matter of their falsity. In this branch of the case the crucial question is whether the plaintiff, as assignee of the coal company, is bound by the statements of Frank J. Kilpatrick. The son, a witness decidedly hostile to the defendant, testified that the father knew about the company and its property; that he had access to the papers of the son, who either gave to his parent or the latter took

79 Or.—42

with his consent the subscription paper which the defendant signed.

1–3. We note in passing that the contract involved is not a negotiable instrument so as to free it from defenses against an innocent holder. It being non-negotiable, the assignee takes no greater nor better rights than existed in the hands of the original holder, the assignor. We remember also that this is not an action to enforce against the company a contract made through its alleged agent, where it would be a legal platitude to say that the party seeking to recover from a defendant on a compact made with the latter's agent must prove the agency. This principle, however, is not by the mark in this case. Here the plaintiff, as successor in interest of the coal company, has undertaken to recover upon an agreement not made directly by its predecessor, but through someone else who assumed to act for it. The plaintiff affirms the contract, and is not resisting its enforcement. It is without dispute that the transaction was accomplished in the city of New York, while the properties of the coal company were in the State of Tennessee, and that Frank J. Kilpatrick was the only person with whom the defendant talked concerning any of the matters involved. It is manifest that the elder Kilpatrick was not acting for himself; for the contract which resulted was in the name of the coal company, on the one hand, and the defendant, on the other. He was not acting for the defendant either, for the latter was present in person and conducted the negotiations for himself. The elder Kilpatrick occupied a position adverse to the defendant. He assumed to represent the other party in the affair. Without him it would not have happened, and the plaintiff would have nothing to sue upon here. It may be granted, for it is beyond question, that he had

no actual authority to represent the coal company in the first instance; yet the fact remains that the convention upon which the plaintiff relies was the result solely of the negotiations between Kilpatrick and the defendant. The son declared as a witness that his father knew of the conditions of the company and its affairs. It is unchallenged that the representations were not according to the fact. Considering that the property in question was in a distant state, and that the defendant was without opportunity to examine for himself without journeying thither, the exaggerated representations of the elder Kilpatrick constituted fraud within the meaning of *Boelk* v. *Nolan,* 56 Or. 229 (107 Pac. 689). The deceit thus practiced constituted an inherent infirmity in the resulting contract. It attends it throughout its course, and, the instrument being non-negotiable, the defense based upon the covin may be urged against anyone seeking to enforce the terms of the document against the defendant. Although without actual knowledge of the fraudulent conduct of the negotiator, anyone relying upon the agreement must take it with the good and the bad. He cannot appropriate what is favorable and ignore its defects. He must take the transaction as a whole, and not by piecemeal. The doctrine is clearly and succinctly stated by Mr. Justice BEAN in *Wilson* v. *McCarthy,* 66 Or. 498 (134 Pac. 1189). Other authorities supporting the principle are *Busch* v. *Wilcox,* 82 Mich. 336 (47 N. W. 328, 21 Am. St. Rep. 563); *Anderson* v. *Scott,* 70 N. H. 350 (47 Atl. 607); *Williamson* v. *Tyson,* 105 Ala. 644 (17 South. 336).

Complaint is made on this branch of the case that the court refused to instruct the jury to the effect that they could not consider representations made by Kilpatrick unless they should find that he was the agent

of the coal company or that the latter ratified his acts after knowledge that he was acting for it, and, further, that no act is capable of artification which is not performed by an agent as agent in behalf of the principal. These instructions would have been applicable if the defendant had been seeking to enforce against the coal company a contract made by him with Kilpatrick as its representative. The reverse of such a proposition is the one upon which the case is founded. Here the effort of the company's assignee is to enforce a stipulation not made directly by the assignor, but by the elder Kilpatrick acting in its behalf, so that the compact must be taken all together, and.not in part only.

4. It is further contended that the plaintiff made no objections to the tender, and must be held to have waived the same. This argument worked out to its logical conclusion would dispense with any fraud or other infirmity of the original agreement. Tender presupposes a valid executory contract of which the tender is an offer of performance. Without such a basis it would be a vain transaction binding no one to offer to do anything. The fallacy of the plaintiff's contention on this point is apparent when we consider for illustration that, if by the actual fraud of the coal company the defendant had been induced really to part with his money in return for worthless bonds, the mere fact that they were in due form and had been delivered to him would not preclude him from recovering what he had paid. Tender refers to manner of performance, and does not dispense with ability to perform nor cover up the fraud inducing the execution of the contract the plaintiff would enforce. Neither does compliance with the letter obviate breach in the substance. *Sayre* v. *Mohney,* 30 Or. 238 (47 Pac. 197), was a case where the plaintiff had tendered a deed

fair upon its face as fulfillment of her contract to sell land to the defendants, who without making objections to the terms of the instrument, as, indeed, they could not, refused to pay the note given for the balance of the purchase price. For all that, however, they were allowed to defend the action brought to recover the amount of the note on the ground that the plaintiff had no title to part of the land included in the contract.

5. Again, it was urged that the court erred in allowing the jury to be informed of the bankruptcy of the coal company occurring prior to the tender of the bonds. In this connection it is beyond controversy that the bonds were not a first lien upon the property of the company. In that sense at least they did not comply with the terms of the offer of first mortgage bonds. Owing to the bankruptcy of the coal company and the settlement of its estate in the manner alluded to in the pleadings, these bonds ceased to be its obligation. They had become inert, and a tender of them by whomsoever made would no longer comply with the terms of the contract sought to be enforced. It would be like tendering the carcass of a dead horse in performance of an executory contract for his sale made while he yet lived.

The court was right in its instructions and we find no error in its record.

The judgment is affirmed.            AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.