### MEEUWSEN *v.* CLOUGH & WARREN CO.

1. PLEADING—DEFENSES—CONTRACTS—ACT OF PUBLIC ENEMIES — NEW TRIAL.

The defense that a contract was made subject to delay or failure caused by fires, strikes, riot, the act of God or the public enemies should be specially pleaded, and comes too late when urged for the first time upon motion for new trial.

2. PRINCIPAL AND AGENT—SELF-CONSTITUTED AGENT—RATIFICATION —SCOPE OF AGENT'S AUTHORITY.

Where a principal adopts the contract of a self-constituted agent, who has assumed to act for such principal without authority, he is bound to inquire and ascertain the extent the self-constituted agent assumed to act in his behalf, and the principal, when he becomes such by adopting his acts, is bound by all acts within the scope of the assumed authority.

3. SAME—ACTS OF AGENT—RATIFICATION—CONTRACTS—CONSTRUC-TION.

Where defendant corporation adopted the act of its secretary in contracting with plaintiff to pay him a commission on an order for goods for his services in assisting to procure the same, by accepting the benefit of such services and paying therefor as goods were shipped, and it clearly

appears that by the contract it was intended to pay a commission upon the whole order, defendant is liable, in an action thereon, although, because of the war with Germany, it was unable to secure certain dyes and was compelled to cancel part of the order.

4. SAME—CONTRACTS—PARTIES TO CONTRACT—WRONG NAME.
Although defendant's secretary contracted in the name of another corporation, where the affairs of the two corporations were closely interwoven, and defendant adopted the act of its secretary, the contract was binding upon it.

Error to Lenawee; Hart (Burton L.), J. Submitted November 4, 1919. (Docket No. 97.) Decided December 22, 1919.

Assumpsit by Peter Meeuwsen against the Clough & Warren Company and the Manophone Corporation for commissions on the sale of goods. Judgment for plaintiff. Defendant Manophone Corporation brings error. Affirmed.

*Franklin J. Russell* and *Baldwin & Alexander,* for appellant.

*Charles L. Robertson* and *James H. Cornelius* (*L. W. Harrington,* of counsel), for appellee.

KUHN, J. The plaintiff, in March, 1917, was a manufacturers' agent engaged in placing contracts between the assemblers of talking machines and the manufacturers of cabinets. Defendant Clough & Warren Company, prior to December 20, 1916, was engaged in the manufacture and sale of pianos and organs at Adrian, Michigan. The defendant Manophone Corporation is a corporation, organized on December 20, 1916, at which time it took over the plant and business of the defendant Clough & Warren Company and since that time has been engaged in the manufacture and sale of talking machines and talking machine cabinets at the city of Adrian. The Clough

& Warren Company has not been engaged in any business since it transferred its plant and business to the defendant Manophone Corporation, although it has not been formally dissolved. There were different stockholders, but Mr. Warren, who was treasurer of the Clough & Warren Company, became the vice president and treasurer of the Manophone Corporation, and Mr. Essex, who was secretary of the Clough & Warren Company, became secretary of the Manophone Corporation.

About March 1, 1917, the Manophone Corporation received a letter from the Playerphone Talking Machine Company of Chicago, stating that it was in the market for talking machine cabinets, and on March 7, 1917, Mr. Essex went to Chicago for the purpose of calling on the Playerphone Company. On March 8th, the plaintiff and Mr. Essex met in Chicago and the latter gave the plaintiff a writing known in the record as Exhibit "A," which reads as follows:

"CHICAGO, 3/18/17.
"For services rendered replacing contract with Playerphone Company, we agree to pay Mr. P. Meeuwsen 5% commission.
"CLOUGH & WARREN CO.,
"By L. W. ESSEX, Sec'y."

On the following day, Mr. Essex and the plaintiff called upon the Playerphone Company, the visit resulting in an order being given to the Clough & Warren Company for cabinets of the value of $67,500. This order was subsequently transferred to the Manophone Corporation and due shipment made to the amount of $26,630.65. Cabinets of the value of $3,448.92 were returned as defective and were credited to the Playerphone Company account, which left the net business done the sum of $23,181.73.

It is claimed that the Playerphone Company order was subsequently cancelled for the reason that Ger-

man dyes were necessary to meet the specifications of the Playerphone Company and that these dyes were not obtainable, by reason of the war with Germany. It is claimed for the plaintiff that he is entitled to recover a commission of 5% on the full amount of the Playerphone order, whether any shipments were made or not. The defendant Clough & Warren Company claims that Exhibit "A" was not authorized by it and was not a valid and binding obligation upon it. The defendant Manophone Corporation claims that the writing in Exhibit "A" was never authorized by it and that it never knew of the writing and that it was not a valid contract binding upon it and that the only contract or agreement between the plaintiff and the defendant Manophone Corporation of which the latter has knowledge was to pay a commission of 5% on shipments actually made to the Playerphone Company. The Manophone Corporation paid the commissions upon such shipments made and settled for by the Playerphone Company.

The case was tried before the court without a jury and the trial judge found that the writing known as Exhibit "A" was not a valid contract as to the defendant Clough & Warren Company and dismissed the case as to it. He further found that the writing was a valid contract between the plaintiff and the defendant Manophone Corporation and that the plaintiff was entitled to recover a commission of 5% on the full amount of the Playerphone order.

A motion for a new trial was made in which motion it was urged for the first time that the defendant should be excused or relieved from the obligation to pay the commission because of the provision in the contract which stipulated that the performance of the contract was to be subject to delay or failure caused by fires, strikes, riot, the act of God or the public enemies. Such a defense, if urged upon the trial,

should have been specially pleaded under the notice
of the special defense which was annexed to the plea
of the general issue in order to comply with Circuit
Court Rule No. 23. But, nevertheless, while such a
defense may have been known to the defendant Mano-
phone Corporation, it was not urged upon the trial
and no notice of it given, and the first suggestion made
with reference to it was upon the motion for new
trial. We are of the opinion that, having been made
at that time without any other notice having been
given of it, it came too late and cannot now be urged.

The meritorious question involved in the contro-
versy is whether or not the court erred in holding the
writing (Exhibit "A") to be a valid contract between
the plaintiff and the defendant Manophone Corpora-
tion. The affairs of the two defendant corporations
were so interwoven as might very readily and easily
have led a person to believe that, so far as their busi-
ness was concerned, they were one and the same com-
pany. There is no dispute that the Manophone Corpo-
ration was informed that Meeuwsen was to have a 5%
commission. The question is, Upon what was he to
receive the commission? The memorandum in writ-
ing, showing what the contract entered into by Meeuw-
sen and Essex was, clearly indicates that it was in-
tended to be upon the whole order. The Manophone
Corporation accepted the benefit of Mr. Meeuwsen's
services, approved the contract which was made by
him, and proceeded to send him commissions as the
goods were shipped and paid for.

It is the claim of the defendant that it did not have
full knowledge of the contract as made by Essex and
that Essex had not been authorized to make the con-
tract which the plaintiff relies upon. The trial court
held that, as a matter of law, under the peculiar cir-
cumstances of this case, that having accepted the ben-
efits of Mr. Meeuwsen's services, if it did not have full

knowledge of the contract, it was its legal duty to make the needed inquiry of Essex or of Meeuwsen to discover all of the terms of the commission contract. This conclusion in law, in our opinion, finds support in the decisions of this court.

In *Busch* v. *Wilcox*, 82 Mich. 336 (21 Am. St. Rep. 563), in commenting upon the law with reference to the binding effect of the acts of a self-constituted agent. the following is stated:

"The law, as we conceive it to be, is this:  When a person deals with an authorized agent, he is bound to inquire and ascertain the extent and limit of his authority to bind the principal, and the principal is bound by all acts of the agent within the scope of his authority; and when the principal adopts the contract of a self-constituted agent, who has assumed to act for such principal without authority, he is bound to inquire and ascertain the extent the self-constituted agent assumed to act in his behalf, and the principal, when he becomes such by adopting his acts, is bound by all acts within the scope of the assumed authority; and in both cases the liability of the principal extends to the frauds or misrepresentations of the agent committed or made while acting within the scope of the real or assumed authority.  We entertain no doubt upon the law that should govern the case."

We think it necessarily follows, under the circumstances of this case, that the defendant Manophone Corporation, by adopting the acts of its self-constituted agent, sought to appropriate to itself all the benefits to be derived from the contract made by him with Meeuwsen as fully as if it had itself induced it in the first instance.  This being true, it must also assume the liabilities which attach to it.  See, also, *Ripley* v. *Case*, 86 Mich. 261; *Sokup* v. *Letellier*, 123 Mich. 640; *Dodge* v. *Tullock*, 110 Mich. 480.

The judgment should be, and is, hereby affirmed.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.